COTTON PLANT OIL MILL COMPANY *v.* BUCKEYE COTTON OIL COMPANY.

Opinion delivered November 15, 1909.

PARTNERSHIP—POWERS OF MAJORITY.—In case of a difference of opinion among partners as to the mode of conducting a business the will of a majority controls.

Appeal from Jackson Circuit Court; *Charles Coffin,* Judge; reversed.

*J. F. Summers* and *John W. & Joseph M. Stayton,* for appellant.

1. The arrangement between these parties constituted a partnership. Whether or not exclusive authority to buy and sell cotton seed was conferred upon Pearce is a disputed question; but, if such authority was conferred, appellant would not be bound by it unless notice had been given thereof. 30 Cyc. 401 (e) and cases cited.

2. If exclusive authority was conferred upon Pearce, it was revocable by the action of a majority of the partners. The bill of sale to appellant was executed prior to the bill of lading to appellee executed by Pearce's procurement. The execution of the bill of sale constituted a revocation of Pearce's authority. 31 Cyc. 1303 and cases cited; 30 Cyc. 481; George on Partnership, 158.

3. Pearce's testimony is not sufficient to contradict the date of the bill of sale. Its execution and delivery was all that was necessary to complete the sale to appellant. 31 Ark. 163;

35 Ark. 190; 80 Ark. 572. There could have been no delivery to appellee until the bill of lading was procured.

*Gustave Jones* and *J. W. & M. House,* for appellee.

1. In case of a trading partnership, every partner, in the absence of any special arrangement between the parties, is entitled to take part in the management of the busniess; but this rule may be modified by partnership agreement, contract or conduct of the parties, so that one part of the business may be committed to one member, another part to another member, or the whole management to one member of the firm. 23 Ark. 566; 44 Ark. 34. Such an agreement cannot be waived or changed except by consent of all members of the partnership, and then only in a court of equity. 44 Ark. 36; 54 Ga. 29; 55 Ga. 427; 32 Vt. 616. The proof is clear that Pearce was made the sole manager of the Tupelo Gin Company, and that he was elected secretary and treasurer, was given exclusive authority to buy and sell cotton seed and had entire management of the Tupelo gin. If appellant had notice of these facts, or had sufficient facts before it to put a reasonable person on notice that such was the the case, it was bound by such partnership agreement, and purchase of seed from any other persons than Pearce would not be binding or valid. 48 Am. St. Rep. 436; 38 N. H. 27; 75 Am. Dec. 183; 4 Johns. 251; 4 Am. Dec. 273. But this is not a trading partnership, but is a non-trading partnership, such as a number of persons engaged in mining operations, or in a farming operation, and in such cases a *bona fide* purchase does not apply. 26 Am. Rep. 185; 19 Am. Rep. 757. In such partnerships the authority imparted to the individual member to bind the partnership in transactions with third persons is limited by the nature of the business. 50 Miss. 358.

2. There was no completed sale to appellant. The bill of sale was executed by two partners only. They could not bind the gin company. Two members of the partnership had no power to make the sale under the agreement, and there was no such delivery as is required by law. Moreover, appellant knew that Pearce was the only one authorized to buy and sell seed. 1 Bates on Partnership, § 323.

HART, J. This is an appeal from a judgment rendered in the Jackson Circuit Court in favor of the Buckeye Cotton Oil

Company against the Cotton Plant Oil Mill Company for two cars of cotton seed.

In the summer of 1906 a local lodge of the Farmers' Union wished to rent a cotton gin near Tupelo, Ark., for the benefit of its members, and a committee for that purpose was appointed. Without going into details, it is sufficient to say that Dr. W. N. Pearce, G. W. Neeley, J. A. Wilson, Thomas Hurst, T. J. Looney and M. F. Massey agreed to rent the gin with the understanding that the members of the union should haul them their cotton. The above-named parties were to share the profits and bear all the losses of the business. The business was to be conducted in the name of Farmers' Union Gin Company of Tupelo. They rented a gin from the Tupelo Gin Company, and made and entered into a written contract with it, whereby they agreed to sell to the Cotton Plant Oil Mill Company all of their cotton seed, provided the company would pay the customary price for the seed. The same persons owned the Cotton Plant Oil Mill Company, and the Tupelo Gin Company. G. W. Neeley was elected president, and Dr. W. N. Pearce was elected secretary and treasurer of the Farmers' Union Gin Company of Tupelo. It was understood that Dr. Pearce would handle all the money, and buy and sell all the cotton seed handled by the company. There is testimony tending to show that this fact was known to the Cotton Plant Oil Mill Company. Pursuant to their agreement, they began to ship seed to the Cotton Plant Oil Company; Dr. Pearce handling the business for the Gin Company. Sometime in the latter part of October or the first part of November a controversy arose between Dr. Pearce and the manager of the Cotton Plant Oil Company, and Dr. Pearce began shipping seed to the Buckeye Cotton Oil Company. On the 15th day of November, 1906, the Gin Company had a quantity of seed in a house near the railroad track, and Dr. Pearce was loading the seed in the cars, preparatory to shipping them to the Buckeye Cotton Oil Company at Little Rock, Ark.

On the same day G. W. Neely and M. F. Massey executed a bill of sale of these seed to the Cotton Plant Oil Mill Company, which is as follows:

$1,117.62.                                    "Tupelo, Ark., Nov. 15, 1906.

"Received of the Cotton Plant Oil Mill Company eleven hundred and seventeen 62-100 dollars, as an advance payment on

(100) one hundred tons of cotton seed now in seed house of Tupelo Gin Company, and being loaded in (2) two I. C. Refrigerator Cars, towit: one car No. 54,053 and one car No. 54,853. These seed to be shipped out as soon as said cars can be loaded and sufficient others furnished us on side track at said gin, and to be billed to the Cotton Plant Oil Mill Company at Cotton Plant, Ark., the price being twelve dollars per ton on cars at Tupelo.

"Farmers' Union Gin Co. of Tupelo.

"By G. W. Neeley, President.

"M. F. Massey."

G. W. Neeley, J. A. Wilson, M. F. Massey and T. J. Looney were present when the bill of sale was drawn up, and approved of its execution. The cars of seed in controversy are the ones mentioned in the bill of sale.

On the 16th day of November, 1906, after the cars had been loaded, Massey got the numbers of the cars and went to the agent of the railroad company for a bill of lading. While there, Dr. Pearce came up and forbade the agent to issue a bill of lading to the Cotton Plant Oil Mill Company, and demanded one for the Buckeye Cotton Oil Company, which was issued.

On the 19th day of November, 1906, the Cotton Plant Oil Mill Company instituted a suit in replevin against G. W. Neeley and others for the possession of the two cars of seed and also the seed in the house. The seed were taken charge of by the sheriff, and afterwards the Buckeye Cotton Oil Company intervened, claiming to own the two cars of seed, and upon giving bond was allowed to retain possession pending the litigation. The value of the seed was $445.03.

Dr. Pearce for the intervener testified that on the 15th day of November, 1906, he had the two cars set on the side track and commenced to load them. That he finished loading one of them on the evening of the 15th, and the other the next morning. That he got a bill of lading on the 16th, and sent it to the Buckeye Cotton Oil Company. He says that he does not think that the bill of sale to the Cotton Plant Oil Company bears its true date, but does not state any fact or circumstances upon which his belief is founded. The other witnesses testify that the bill of

sale bears the date that it was executed, and that the considera-
tion named therein was a balance due the Cotton Plant Oil Mill
Company by the Farmers' Union Gin Company of Tupelo.

.There was a trial before a jury, and a verdict for the in-
tervener for the two cars of seed.

This statement places the testimony in its most favorable
light to appellee. We do not think it entitles appellee to recover.
It is conceded that the agreement of Pearce, Neeley, Massey,
Looney, Wilson and Hurst constituted a partnership. A part
of their business was to buy and sell cotton seed, and this made
it a trading partnership. George on Partnership, p. 91.

It is earnestly insisted by counsel for appellee that there
was no complete contract by virtue of the bill of sale of Novem-
ber, 15, 1906; because by the terms of the original agreement Dr.
Pearce had exclusive authority to buy and sell seed, and this fact
was known to appellant. The record in this case discloses that
a majority of the partners became dissatisfied with the way Dr.
Pearce was conducting the selling of seed, and that in good
faith for the interest of the partnership they directed the bill of
sale in question to be executed. This they had a right to do.
Ordinarily, each partner is the general agent for the firm for
the transaction of its business in the ordinary way. In this case
the other partners delegated this power to Dr. Pearce. The
power to grant the exclusive agency carries with it the right to
revoke it. The rights of Dr. Pearce are not involved in this
suit; and for this reason the authorities relied upon by counsel
for appellee are not applicable to the issue raised by the appeal.
There was here a diversity of opinion between the partners as
to the conduct of its affairs; and a majority of them, acting in
the scope of the partnership business, directed a sale of the seed
in controversy, and the partners to whom this authority was
given executed a bill of sale to the two cars of seed in con-
troversy. The act of the majority of the partners governs in
such cases. George on Partnership, p. 158; Story on Partner-
ship, § 123; 30 Cyc. p. 480, and cases cited in note 57.

Again, it is objected that the bill of sale does not bear its
true date. It bears the date of November 15, 1906. All the
witnesses except Dr. Pearce say that was the date of its execu-
tion. Dr. Pearce only says he does not think so. He does not

attempt to give its date or to detail any fact or circumstance which leads him to believe that it was not executed on that day. This was not sufficient to impeach it.

From the conclusions we have reached it necessarily follows that it was a completed sale to appellant on the 15th inst., and that, as the bill of lading to appellee was not issued until the 16th inst., the jury was not warranted in finding for appellee.

Because there was no evidence to support the verdict, the judgment will be reversed and the cause remanded.